**LEE LITIGATION GROUP, PLLC**
CK Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

AL SADIK MURTHADA,
*on behalf of himself, FLSA Collective Plaintiffs*
*and the Class,*

          Plaintiff,

          v.

HIGHGATE HOTELS, L.P.,
      d/b/a ROYALTON PARK AVENUE HOTEL
TG 29 HOSPITALITY LLC, and
JOHN DOE CORPORATION,

          Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

     Plaintiff, AL SADIK MURTHADA (herein, "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, HIGHGATE HOTELS, L.P. d/b/a ROYALTON PARK AVENUE HOTEL, TG 29 HOSPITALITY LLC., and JOHN DOE CORPORATION. ("Defendants").

## INTRODUCTION

1.    Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from

Defendants: (1) unpaid wages, including overtime, due to a policy of time-shaving, (2) illegal retention of gratuities, (3) liquidated damages, and (4) attorneys' fees and costs.

2.    Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to a policy of time-shaving, (2) unpaid spread of hours premium, (3) unpaid call-in pay premiums, (4) illegal retention of gratuities, (5) statutory penalties, (6) liquidated damages, and (7) attorneys' fees and costs.

3.    Plaintiff further alleges that, pursuant to the New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL"), and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), that Plaintiff was deprived of his statutory rights and was discriminated against as a result of Defendants fostering a hostile work environment based on Plaintiff's race, religion, language, and nationality; and seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.    Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

6.    Plaintiff, AL SADIK MURTHADA, is a resident of Queens County, New York.

7.    Defendant HIGHGATE HOTELS, L.P. is a foreign limited partnership authorized to conduct and operate business in the State of New York. HIGHGATE HOTELS, L.P. currently

owns, manages, and operates the Royalton Park Avenue Hotel, located at 420 Park Ave S, New York, NY 10016. Defendant HIGHGATE HOTELS, L.P. undertook control of the Royalton Park Avenue Hotel in or about December 2017. Defendant HIGHGATE HOTELS, L.P. has an address for service of process located at c/o COGENCY GLOBAL INC., 122 East 42nd Street, 18th Floor, New York, NY 10168.

8.    Defendant TG 29 HOSPITALITY, LLC is a foreign limited liability corporation authorized to conduct and own business in the State of New York.  Defendant TG 29 HOSPITALITY, LLC took control of the Food and Beverage Department at the Royalton Park Avenue Hotel for when Plaintiff was employed there, specifically from September 2018, and continue to possess control and management of the food and beverage department at the Royalton Park Avenue Hotel. Defendant TG 29 HOSPITALITY, LLC has an address for service of process located at c/o CORPORATION SERVICE COMPANY, 80 State Street, Albany, NY 12207.

9.    While the above-listed Corporations are nominally separate entities, they operate Royalton Park Avenue Hotel as a single integrated enterprise, for the purposes of FLSA and the New York Labor Law ("NYLL"). Specifically, Corporate Defendants all engage or engaged in relative activities, share common ownership and have a common business purpose:

    a.  Defendant HIGHGATE HOTELS, L.P. directly controls the overall management, owns, and operates the Royalton Park Avenue Hotel.

    b.  Defendant TG 29 HOSPITALITY, LLC operates and manages the food and beverages department exclusively, in the Royalton Park Avenue Hotel.

    c.  All Defendants individually market and advertise their contribution in the Royalton Park Avenue Hotel. *See* **Exhibit A**.

d. Defendants share common customer base. Customers visiting Royalton Park Avenue Hotel are provided food and beverages services by TG 29 HOSPITALITY, LLC, including room service and a-la carte services.

e. Defendants interchange employees. Employees working for the food and beverage department would often also serve the room service department as needed.

f. Employees would be required to transfer supplies, such as ice, napkins, cutlery, and plates between all Defendants.

g. Employees are required to report to both Corporate Defendants, who delegate duties, form schedules, and run an integrated management.

h. Defendants jointly and concurrently own liquor licenses for the Royalton Park Avenue Hotel, *See* **Exhibit B**, Royalton Park Avenue Liquor License.

10.   At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the Regulations thereunder.

11.   At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## <u>FLSA COLLECTIVE ACTION ALLEGATIONS</u>

12.   Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt front-of-house and back-of-house employees (including room service staff, restaurant and beverage staff, banquet staff among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

13.   At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and

are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and Class members their (i) proper wages, including their overtime premium at one and a half times the regular rate for all hours worked over forty (40) in a workweek, due to a policy of time-shaving; and (ii) illegal retention of gratuities. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

14.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

15.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt front-of-house and back-of-house employees (including room service staff, food and beverages staff, banquet staff) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

16.    All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For

purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

17.    The proposed Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff is a member of the Class and the Tipped Subclass.

18.    Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of (i) failure to pay wages for all hours worked due to a policy of time-shaving; (ii) failure to compensate Plaintiff and Class Members with unpaid call-in pay premiums; (iii) failure to pay spread of hours premium; (iv) illegal retention of tips; (v) failing to provide proper wage statements to employees; and (vi) failing to provide proper wage notices to employees.

19.    Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

20.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

21.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

22.    Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who

are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

23.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.    Whether Defendants employed Plaintiff and the Class within the meaning of the NYLL;

b.    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class Members;

c.    At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and the Class Members for their work;

d.    Whether Defendants properly notified Plaintiff and the Class members of their hourly rates and overtime rates;

e.    Whether Defendants paid Plaintiff and Class Members the proper compensation for all hours worked under the NYLL;

f.    Whether Defendants operated their business with a policy of not compensating employees for all hours worked due to time-shaving;

g.    Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

h.    Whether Defendants illegally retained gratuities;

i.    Whether Defendants properly compensated Plaintiff and Class members with their call-in premiums;

j.     Whether Defendants paid Plaintiff and Class members in the New York State spread of hours premium when their workdays exceeded ten (10) hours;

k.    Whether Defendants provided proper wage statements informing all non-exempt employees of information required to be provided on wage statements as required under the NYLL and applicable state laws; and

l.     Whether Defendants provided proper wage and hour notice, at date of hiring and with each change in pay rate thereafter, to all non-exempt employees, in their native language, per requirements of the NYLL.

## **STATEMENT OF FACTS**

<u>Plaintiff's Wage and Hours Claims</u>

24.    In or around October 2017, Plaintiff AL SADIK MURTHADA was hired by Defendants to work as a room service attendant for Defendants at their Royalton Park Avenue Hotel (Gansevoort Park Avenue Hotel at the time of Plaintiff's joining) located at 420 Park Avenue S, New York, NY 10016 location. Plaintiff was employed by Defendants until or around March 2023.

25.    From the inception of his employment until or about March 2020, Plaintiff worked five days a week, eight (8) hours a day, amounting to an estimated forty (40) hours per week, not including overtime. The shifts could either start in the morning at 6:00 a.m. until 2:00 p.m.; night shift starting from 2:00 p.m. until 10:00 p.m.; or overnight shift from 10:00 p.m. to 6:00 a.m. Approximately three (3) to five (5) times a month, Plaintiff would work double shifts as needed. From February 2022 until October 2022, Plaintiff worked double shifts, five days a week, from 6:00 a.m. to 10:00 p.m. During this time, Plaintiff was working approximately eighty (80) hours in a week.

26.     Throughout his employment, Plaintiff was compensated at the rate of $15.00 per hour.

27.     Throughout his employment, Plaintiff was not permitted an assigned break time and had to eat while working. Occasionally, Plaintiff would ask his managers to for a short break to eat, but they would always direct him to go later, and would refuse to relieve him from his duties, in violation of the FLSA and NYLL.

28.     Throughout his employment, Plaintiff regularly worked days exceeding ten (10) hours in length, but Defendants failed to provide Plaintiff with his spread-of-hours premium for the workdays that exceeded ten (10) hours in length. Class Members similarly failed to receive their spread of hours premium.

29.     Throughout his employment, Defendants would require employees to clock out at the end of their shift, regardless of whether Plaintiff and Class Members would continue to work after clocking out. Multiple times during the course of his employment, Plaintiff was made to wait back and wash the dishes after the end of his shift because the dishwasher left at 10:00 p.m. On those days, Plaintiff worked an additional two (2) to three (3) hours but was not compensated an overtime wage.

30.     Throughout his employment, Plaintiff would occasionally be sent home despite showing up for his scheduled shift, but Defendants would not provide Plaintiff with his call-in pay premiums. Class Members would similarly be sent home from their scheduled shifts due to last minute and discordant scheduling system Defendants followed, and not be provided their call-in pay premiums.

31.     Alternatively, Plaintiff and other Class Members would be summoned to work at an hour's notice to cover for another employee. Defendants regularly scheduled Plaintiff and other Class Members for early morning shifts starting 6:00 a.m., and such information would only be

transmitted to Plaintiff and Class Members at 11:00 p.m. the night before, not allowing adequate rest time between shifts.

32.    Throughout Plaintiff's employment with Defendants, he was expected to show up and assist other departments. Plaintiff has routinely assisted the banquet department but was not included in their tip pool. Plaintiff spent approximately three (3) hours a week helping the banquet department. The banquet department earned up to $3,000- $5,000 in tips a week, but Plaintiff did not receive any tips.

33.    Throughout Plaintiff's employment, Plaintiff was included in the tip pool with the Room Service Department, but Plaintiff never received all the tips he was entitled to. The managers illegally retained tips earned by Plaintiff. Many a times, this would be reported to Defendants, who took no action to alleviate the damage. The Tipped Subclass Members similarly suffered from management's illegal retention of tips and Defendants' inaction about it.

34.    Throughout his employment, Plaintiff and Class Members did not receive wage statements that were in compliance with the NYLL. Defendants failed to satisfy the requirements under the NYLL because they failed to provide proper wage statements due to unpaid wages, including overtime wages due to time shaving. In other words, Plaintiff and Class Members did not receive proper wage statements, as their statements failed to accurately reflect the number of hours worked and their proper compensation.

35.    Defendants failed to provide Plaintiff and the Class Members with proper wage notices at hiring and at all changes of payrate thereafter. Plaintiff did not receive proper wage notices either upon being hired or upon every change of pay rate in violation of the NYLL.

36.    Defendants failed to properly provide call-in pay premiums when Defendants sent Plaintiff and Class Members home when they were scheduled to work a shift, in violation of the NYLL.

37.    Defendants failed to properly provide Plaintiff and the Class Members with proper wage notices in statutory compliance with the NYLL.

38.    Defendants failed to properly provide Plaintiff and the Class Members with proper wage statements in statutory compliance with the NYLL.

39.    Defendants knowingly and willfully operated their business with a policy of not paying the proper overtime rate thereof for all hours worked to Plaintiff, FLSA Collective Plaintiffs, and Class members, due to a policy of time-shaving, in violation of the FLSA and the NYLL.

40.    Defendants knowingly and willfully operated their business with a policy of not paying spread-of-hours premium to Plaintiff and Class members, in violation of the NYLL.

41.    Defendants knowingly and willfully operated their business with a policy of not paying call-in pay premiums to Plaintiff and Class members, in violation of the NYLL.

42.    Defendants knowingly and willfully operated their business without providing proper wage notices in violation of the NYLL.

43.    Defendants knowingly and willfully operated their business without providing proper wage statements in violation of the NYLL.

<u>Plaintiff's Individual Discrimination Claims</u>

44.    Throughout his employment, Plaintiff suffered at the hands of Defendants due to discrimination arising from Plaintiff's race, national origin, religion, and language. Plaintiff faced a loss of wages, and extreme physical and emotional distress as an outcome of constant hostility and bullying he was subject to at Defendants' place of employment.

45.    Throughout his employment, Plaintiff's managers and supervisors created and fostered a hostile work environment by discriminating, targeting, and bullying Plaintiff because of his faith, race, national origin, and language.

46.    Plaintiff is a follower of Islamic faith, and hails from Iraq. Managers and Supervisors employed by Defendants mocked Plaintiff and called him "Ali Baba" who is a famous thief in the Middle East. They additionally mocked him for his middle eastern accent, his beard, and made derogatory statements at the expense of his faith. Defendants obstructed Plaintiff from a free practice of the tenets of his religion. For example – Plaintiff frequently requested Defendants to honor his lunch break so he could pray during the time. As mentioned previously, Plaintiff was not permitted to take breaks, which forced Plaintiff to sacrifice on following his religious practice of praying five (5) times in a day.

47.    Plaintiff was subject to a differential treatment at the hands of Defendants. Plaintiff began his employment with Defendants as a Room Service Attendant in October 2017, at the rate of $15 per hour. Throughout the duration of his employment, Defendants did not promote Plaintiff to a higher position, nor did they grant him any raise in his wages. Seven (7) years is an exceptionally long time for any employee to continue working without a raise or a promotion. In contradiction, Plaintiff routinely observed his coworkers being promoted to managerial levels within one and a half (1.5) years of their employment with Defendants. Plaintiff also noted how all new employees for Defendants were hired at eighteen (18) to twenty (20) dollars per hour.

48.    Plaintiff was discriminated against, and not granted a promotion or a raise, only because he was an easy target for Defendants to keep under their thumb. Plaintiff's performance was never in question which can be witnessed by the number of hours he has accrued throughout his employment. Plaintiff was also one of the very few employees of Defendants to have worked

13

double shifts for a period as long as four months (February 2022- October 2022). Defendants imposed arbitrary conditions onto Plaintiff, which can be witnessed by how he, alone, was rendered in charge of servicing two hundred and forty-nine (249) rooms for Defendants.

49.    Plaintiff urged his managers and supervisors of Defendants to promote him or give him a raise. He even reported his managers' behavior to Defendants. Defendants turned a blind eye to Plaintiff's pleas in a callous and disregardful manner.

50.    Plaintiff was forced to terminate his employment with Defendants due to a cumulative treatment of bigotry, discrimination, loss of wages, and professional growth.

51.    Defendants cruelly and prejudicially fostered a hostile work environment that caused deep discomfort to Plaintiff. Because of this practice, Plaintiff suffered physical discomfort and emotional humiliation while working for Defendants.

52.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members.

## STATEMENT OF CLAIM
### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT

53.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

54.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

55.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

56.    At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

57.    At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, due to time-shaving.

58.    At all relevant times, Defendants had a policy and practice that illegally retained gratuities from Plaintiff and a subclass of FLSA Collective Plaintiffs.

59.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

60.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper overtime premium, when Defendants knew or should have known such was due.

61.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

62.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

63.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, unpaid wages and overtime due to time-shaving, illegally retained gratuities, and liquidated

damages.

64.    Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**
**VIOLATION OF THE NEW YORK LABOR LAW**

65.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

66.    At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

67.    At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class Members their proper wages, including overtime, due to time-shaving, in direct violation of the NYLL.

68.    Defendants willfully violated the rights of Plaintiff and Tipped Subclass members by illegally retaining gratuities, in direct violation of the NYLL.

69.    Defendants failed to properly notify Plaintiff and the Tipped Subclass of their tips and tip pooling policies, in direct violation of the NYLL.

70.    Defendants failed to compensate Plaintiff and Class Members with their spread of hours premiums when working shifts in excess of ten (10) hours per day, in direct violation of the NYLL.

71.    Defendants failed to compensate Plaintiff and Class Members with their call-in pay premiums, in direct violation of the NYLL.

72.    Defendants failed to properly notify employees of their overtime rate, in direct violation of the New York Labor Law.

73.    Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under the New York Labor Law.

74.    Defendants knowingly and willfully operated their business with a policy of not providing wage statements, as required under the NYLL.

75.    Due to Defendants' NYLL violations, Plaintiff and Class members are entitled to recover from Defendants unpaid wages, unpaid wages due to time-shaving, unpaid spread of hours premium, unpaid call-in pay premiums, unpaid wages due to illegally retained tips, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the NYLL.

**COUNT III**
**VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW**

76.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

77.    The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment, and the retaliation thereof, on the basis of race, language, religion, and national origin.

78.    Plaintiff was an employee and qualified person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

79.    Defendants operated a business that discriminated against Plaintiff in violation of Section 296(1)(a) with respect to the terms, conditions, and privileges of his employment because of his religion, race, language, and national origin, in ways including, but not limited to:

    a.  Creating and fostering a hostile work environment based on Plaintiff's religion, race, and language, and;

17

b.  Verbally offending Plaintiff through usage of derogation directed at his religion, race, language, and national origin.

80.  Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiff's protected rights under Section 296 of the NYSHRL.

81.  As a result of Defendants' unlawful discriminatory practices, Plaintiff sustained injury, including economic damages and past and future physical and emotional distress.

82.  Due to Defendants' violations under the NYSHRL, based on discrimination, Plaintiff is entitled to recover from Defendants: (1) back pay; (2) compensatory damages; (3) punitive damages; and (4) attorney's fees and costs.

83.  Additionally, Defendants violated the NYSHRL by creating and maintaining a hostile work environment. This hostile work environment was created and fostered through pervasive and regular harassment in the form of comments and behavior directed towards Plaintiff.

84.  The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff, which led to his constructive termination.

85.  As a direct and proximate result of said hostile work environment, Plaintiff suffered and continues to suffer actual damages in various ways, including but without limitation, loss of past earnings, mental anguish, and pain and suffering. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYSHRL.

**COUNT IV**
**VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW,**
**ADMINISTRATIVE CODE OF THE CITY OF NEW YORK § 8-107 ("NYCHRL")**

86.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

87.    At all relevant times, Plaintiff was an employee within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

88.    Defendants operated a business that discriminated against Plaintiff in violation of the NYCHRL by discriminating against Plaintiff with respect to the terms, conditions, and privileges of his employment because of his race, religion, language, and national origin in various ways, including but not limited to:

     a.    Creating and fostering a hostile work environment based on Plaintiff's race, religion, language and national origin, and

     b.    Verbally offending Plaintiff through usage of derogation against his religion, race, language, and national origin

89.    Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiff's protected rights under the NYCHRL.

90.    As a result of Defendants' unlawful discriminatory practices, Plaintiff sustained injury, including economic damages, past wages, physical and emotional distress.

91.    Due to Defendants' violations under the NYCHRL, based on discrimination, Plaintiff is entitled to recover from Defendants: (1) back pay; (2) compensatory damages; (3) punitive damages; and (4) attorney's fees and costs.

92.     Additionally, Defendants violated the NYCHRL by creating and maintaining a hostile work environment. This hostile work environment was created and fostered through pervasive and regular discrimination in the form of comments and behavior directed towards Plaintiff.

93.     The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff, which led to his constructive termination.

94.     As a direct and proximate result of said hostile work environment, Plaintiff suffered and continues to suffer actual damages in various ways, including but without limitation, loss of past and future earnings, mental anguish, and pain and suffering. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYCHRL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, the NYSHRL, and the NYCHRL;

b.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.   An award of unpaid wages, including overtime, due to time-shaving due under the FLSA and the New York Labor Law;

d. An award of gratuities illegally retained by Defendants, due under the FLSA and New York Labor Law;

e. An award of unpaid spread of hours premium due under the New York Labor Law;

f. An award of call-in pay premiums due under the New York Labor Law;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

h. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, minimum wages, and "spread of hours" premium pursuant to the New York Labor Law;

i. An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

j. An award of backpay, compensatory damages, and punitive damages due under the NYSHRL;

k. An award of backpay, compensatory damages, and punitive damages due under the NYCHRL;

l. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

m. Designation of this action as a class action pursuant to F.R.C.P. 23;

n. Designation of Plaintiff as Representatives of the Class; and

o. Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: September 29, 2023

                                Respectfully submitted,

By:    */s/ C.K. Lee*
           C.K. Lee, Esq.

           **LEE LITIGATION GROUP, PLLC**
           C.K. Lee (CL 4086)
           148 West 24th Street, Second Floor
           New York, NY 10011
           Tel.: 212-465-1188
           Fax: 212-465-1181
           *Attorneys for Plaintiff, FLSA Collective*
           *Plaintiffs and the Class*